UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6346-CR-FERGUSON

UNITED STATES OF AMERICA,

    Plaintiff,

vs

ORSON HARRIS,

    Defendant
_____/



## DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE

The Defendant, ORSON HARRIS, through undersigned counsel, respectfully moves for a downward departure from the otherwise applicable guideline offense level, and in support thereof, the defendant states:

### Procedural and Factual Background

On December 14, 2000, the government filed a one count indictment alleging that from September 28, 2000 through October 13, 2000, Mr. Harris possessed at least five grams of crack cocaine with intent to distribute. The indictment was premised upon five separate sales of crack cocaine to an undercover law enforcement officer and each individual sale involved less than five grams of cocaine base. See Pre-sentence Investigation Report (PSI) ¶¶ 5-10. The total weight of the cocaine sold during the five sales was approximately 7 grams. Mr. Harris was paid a total of $620.00 for the five transactions. This amount does not include expenditures Mr. Harris made to acquire the cocaine.

On March 2, 2001, Mr. Harris filed a motion to dismiss the indictment as duplicitous because the indictment charged five separate offenses in one count. However, Mr. Harris withdrew his motion to dismiss and entered a plea agreement with the government in which he agreed to cooperate with the government. The government agreed to make Mr. Harris' cooperation known to the Court and file a motion for a downward departure or a reduction in sentence if in the government's judgement, Mr. Harris' cooperation was of such quality and significance to warrant the court granting a downward departure. Pursuant to the plea agreement, Mr. Harris entered a plea of guilty to the indictment on June 1, 2001.

The PSI discloses that Mr. Harris meets the criteria for a career offender because he has three prior felony drug convictions. Accordingly, his guideline offense level was increased from level 26 to level 34. Pursuant to USSG § 4B1.1(B), the criminal history category for a career offender is category VI. Accordingly, after a three level reduction for acceptance of responsibility, Mr. Harris' sentencing range at offense level 31 and criminal history category VI is 188-235 months.

## Over-representation of Criminal History

A sentencing court may depart downward from the offense level axis and/or the criminal history axis of the sentencing table regardless of a defendant's career criminal status. See United States v. Webb, 139 F.3d 1390, 1395 (11th Cir.1998) (citing United States v. Shoupe, 35 F.3d 835, 839 ( 3rd Cir. 1994)). The guideline provision which authorizes the departure is USSG § 4A1.3. This provision permits a sentencing court to depart if reliable information indicates that the criminal category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes. See USCG § 4A1.3. Webb, 139 F.3d at 1395.

2

Although Mr. Harris has 12 criminal history points, the three felony drug offenses which qualify him as a career offender occurred when he was 19 and 21 years old and involved minuscule amounts of drugs. See PSI ¶¶ 31, 32 and 34. At his change of plea hearing and during his PSI interview, Mr. Harris admitted that he had a substance abuse problem. Mr. Harris respectfully submits that a sentence pursuant to the career offender provisions would over-represent the seriousness of his criminal history and the likelihood that he will commit future crimes. See United States v. Senior, 935 F.2d 149 (8th Cir. 1991).

In the Senior case, the Eighth Circuit upheld a districts court's downward departure from a career offender guideline range of 292-365 months to a mandatory minimum sentence of 120 months Senior, 935 F.2d at 150-151. The Senior defendant was charged with possessing cocaine base in excess of 5 grams. His prior convictions included three prior robberies at age 20 and two controlled substance offenses at age 24. Id. Senior received a concurrent twelve-year sentence for the burglaries and a concurrent six-year sentence for the controlled substance offenses. The district court concluded it had the power to depart based upon USCG 4A1.3.

In affirming the district court's downward departure, the Eighth Circuit held that overstatement of the seriousness of the defendant's criminal history was a circumstance unusual enough to warrant departure. Id at 151. The Senior court reasoned that the district court properly considered the historical facts of the defendant's criminal career, including the defendant's age when committing the offenses and the state court's assessment of the seriousness of the crimes. Id

Here, Mr. Harris committed the three prior offenses which qualify him as a career offender at a young age within a relatively short period of time. Accordingly, under the rationale of Senior, this Court may downward depart from the career-offender provisions of the Sentencing Guidelines.

3

See also, United States v. Rivers, 50 F.3d 1126 (2d Cir. 1995) (sentencing judge may depart from offense level or criminal history category if career offender provisions over-represent seriousness of defendant's prior record); United States v. Fletcher, 15 F.3d 553 (6th Cir. 1994) (sentencing court may take age of prior convictions into account when considering defendant's likelihood of recidivism), United States v. Clark, 8 F.3d 839 (D.C. Cir. 1993) (sentence at guideline level without career offender increases not arbitrary where sentencing court decided that career offender over-represented defendant's criminal history); United States v. Bowser, 941 F.2d 1019 (10th Cir. 1991) (downward departure from career criminal status justified when defendant committed prior offenses at age 20 and received a concurrent sentence). If the career offender enhancements were not applied in this case, Mr. Harris sentencing range at offense level 23 and criminal history category V would be 84 to 92 months.

## Sentence Factor Manipulation

Sentencing entrapment or sentence factor manipulation occurs when a defendant, although predisposed to commit a minor or lesser offense, is entrapped into committing a greater offense which is subject to greater punishment. United States v. Castaneda, 94 F.3d 592 (9th Cir. 1996). There are two possible remedies for sentencing entrapment or sentence factor manipulation. First, a sentencing court may decline to apply the statutory penalty provision for the greater offense that the defendant was induced to commit, and instead apply the penalty provision for the lesser offense that the defendant was predisposed to commit. Alternatively, the sentencing court may grant a downward departure from the sentencing range for the greater offense that the defendant was induced to commit. United States v. Riewe, 165 F. 3d 727, 729 (9th Cir. 1998).

4

The Eleventh Circuit distinguishes sentencing entrapment from sentencing manipulation See United States v. Sanchez, 138 F.3d 1410, 1414 (11th Cir. 1998). While sentencing entrapment focuses on the defendant's disposition, sentencing factor manipulation focuses on the conduct of government. Id. Sentencing factor manipulation requires the court to consider whether the manipulation inherent in a sting operation, even if insufficiently oppressive to support an entrapment defense or a due process claim must sometime be filtered out of the sentencing calculus Id. (citing United States v. Connell, 960 F.2d 191, 194 (1st Cir. 1996)). Although the Eleventh Circuit has rejected sentencing entrapment as a viable defense, See United States v. Miller, 71 F.3d 813 (11th Cir. 1996), the Eleventh Circuit has implicitly recognized sentencing factor manipulation as a ground for downward departure under the appropriate circumstances. See Sanchez, 138 F.3d at 1414.

In Sanchez. the defendants were convicted of a conspiracy to possess with intent to distribute cocaine and marijuana. Id at 1412. The charges grew out of a government created reverse sting scenario by which the defendant agreed to invade and steal drugs from a house they thought contained illegal drugs when in fact there was no house and there were no drugs. Id. Law enforcement agents told the defendants that 50 kilograms of cocaine would be found at the fictitious location. Id. The defendant's appealed their sentences arguing, inter alia, that because the amount of drugs used for sentencing purposes was set by a government informant at the direction of a government agent, a downward departure under the theory of sentence factor manipulation was warranted. Id. at 1413.

In addressing the sentence factor manipulation argument, the Sanchez court found that the Eleventh Circuit had not previously directly addressed the theory and the defendants had not raised the theory as a basis for downward departure at the trial level. Id. at 1414. However, the Sanchez

5

Court went on to state that had the issue been properly before the court, the government's conduct in the fictitious reverse sting did not amount to the type of manipulative conduct warranting a downward departure at sentencing. Id. Mr. Harris respectfully submits that the government conduct in this case is the type of conduct which warrants a downward departure for sentence factor manipulation.

Unlike the government's conduct in Sanhez where the sting only involved only one criminal act, the undercover agent in this case continued to purchase cocaine from Mr. Harris until the total weight of the cocaine exceeded five grams. Undoubtedly, this was done to bring Mr. Harris within the provisions of 21 U.S.C. § 841(b)(B) which provides for enhanced penalties for crack cocaine offenses involving more than five grams of cocaine. Had the undercover agent made a singular purchase from Mr. Harris' total offense level would be 29 and the is sentencing range at offense level 29 and criminal history category VI would be 151 to 188 months.

Accordingly, Mr Harris respectfully requests that this Court downward depart from the otherwise applicable guideline range because the government's conduct in this case constitutes sentence factor manipulation. See United States v. Martinez-Villegas, 993 F.Supp 766 (C D. Cal. 1998)(downward departure granted when government induced defendant to deliver 92 kilograms of cocaine when defendant was only predisposed to deliver 10 to 15 kilograms).

### Extraordinary Acceptance of Responsibility and Extreme Remorse

A sentencing court may depart from the otherwise applicable guideline range upon finding of mitigating circumstances of a kind, or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines. See 18 U.S.C. § 3553(b); USSG § 5K2.0. Sentencing courts are authorized to depart from the applicable guideline range if it finds remorse

6

present to an exceptional degree. See United States v. Fagan, 162 F.3d 1280 (10th Cir. 1998). In addition, sentencing courts have the discretion to consider whether a defendant's extraordinary acceptance of responsibility warrants a downward departure upon a finding that the reduction provided for by USSG § 3E1.1 does not adequately reflect the degree of the defendant's acceptance of responsibility. See United States v. Brown, 985 F.2d 478 (9th Cir. 1998).

In this case, Mr. Harris has submitted two acceptance of responsibility statements. See PSI ¶ 14. The second statement was addressed to the citizens of Dania Beach and sent to three leaders in Dania Beach's African American community and each member of the Dania Beach City Commission. The three African American community leaders are Bobbie L. Grace, former city commissioner, Reverend Randall L. Barr, Pastor of the Saint Ruth Baptist Church, and Robert L. McCoy, former president of Men United for Positive Action (MUPA), owner of First Street Barber Shop and member of the Board of Directors for the the South Florida Youth Football League. In this statement Mr. Harris expresses his remorse for the damaged he has caused to his community.

While this might not constitute extraordinary acceptance in an ordinary case, the African-American population in Dania Beach is a small and tightly knit community. The area is approximately one and one-half square miles with a population of approximately 5000 people. Mr. Mccoy has agreed and Mr. Harris has consented to an enlargement of the acceptance statement so that it may be posted at Mr. Mccoy's barber shop for all to see in hopes to discourage other young men from making similar mistakes. Accordingly, Mr. Harris respectfully requests that the Court consider his extraordinary acceptance of responsibility and extreme remorse when determining the sentence to be imposed in this case.

**Conclusion**

Based upon the foregoing facts, arguments and citations of authority, Mr. Harris respectfully requests that the Court grant his Motion for Downward Departure and impose a sentence below the otherwise applicable guideline range.

Respectfully submitted,

KATHLEEN M. WILLIAMS
FEDERAL PUBLIC DEFENDER

By: _____
Daryl E. Wilcox
Assistant Federal Public Defender
Attorney for Defendant
Florida Bar No. 571962
1 East Broward Blvd., Sutie 1100
Fort Lauderdale, Florida 33301
(954) 356-7436 / 356-7556 (Fax)

CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was mailed and faxed on this 31 day of August, 2001 to Assistant United States Attorney Kathleen Rice, 500 E. Broward Boulevard, 7th Floor, Fort Lauderdale, Florida and United States Probation Officer Lynell Fahie, 300 NE 1st Avenue, Room 315, Miami Florida 33132.

_____
Daryl E. Wilcox